IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

RONNIE DOLLAR                                                                                             PLAINTIFF

v.                                              NO. 4:24-cv-333 JM

DEREK ADAMS, individually and in
his official capacity as Chief Deputy Sheriff
of Van Buren County; CHASTA HARRISON,
Sheriff's Investigator for Van Buren County
Sheriff's Office; ERIC KOONCE, individually and
in his official capacity as Sheriff of Van Buren
County; VAN BUREN COUNTY, Arkansas                                         DEFENDANT

ORDER

This case arises out of the arrest of Ronnie Dollar when he argued with then Chief Deputy Sheriff Derek Adams about whether Dollar had to pay a towing charge to pick up his truck. Pending is a motion for summary judgment filed by the defendants. (Doc. No. 29). The motion has been fully brief and is ripe for determination.

I. Factual Background

In January of 2024, Ronnie Dollar's brother was inside a gas station in Clinton, Arkansas paying for gas when his pickup truck was stolen. After taking the truck for a joy ride, the thief abandoned the truck at Flash Market. The county had it towed. A day or two later, on Friday, January 19, 2024, Dollar got a call from his brother asking him to pick up the truck for him. Believing he had a warrant out for his arrest for failure to pay fines, his brother gave Dollar a bill of sale for the truck and asked him to go retrieve it. Ronnie went to the Clinton Police Department and spoke with Officer Jay Murdock about the truck. After some checking, Murdock told Dollar that the truck had been impounded by the county. He also told Dollar that Dollar should not have to pay the towing fee since the truck had been stolen.

Dollar, driven by his cousin, then went to the sheriff's office. He was directed to a service window where he told the employee that he was there to retrieve his truck, he had a bill of sale, and he wanted to talk to Sheriff Eric Koonce about getting it. Instead of the sheriff, Investigator Chasta Harrison and Chief Deputy Derek Adams came through the door into the lobby where Dollar was waiting. Dollar testified that he said "I asked for the sheriff" to which Adams responded that he was the chief deputy. Dollar was told that he was going to have to pay $218 for the towing fee. He argued that he should not have to pay the fee, that the truck had been stolen, and it was the county who had towed it "for no good reason." Dollar and Adams argued, and again Dollar said he wanted to talk to the sheriff. There is a factual dispute about what happened next.

> Dollar testified:
>
> We argued about whether I was going to pay the tow bill. Then, Derek Adams started getting mad and told me to leave. I told him I didn't have to. It was a public office. I was there on official business. And I had done asked to talk to the sheriff a few times. And at which, Derek came out grabbed me by my arm, and I jerked my arm away and turned around and looked at him like, what are you doing? And then he grabbed me by my arm again and shoved me out the door, and at that point I done decided I was going to get in the car, and I started to walk away, and he said something, and I turned around, and he got up in my face and started yelling. I do not remember what all he said. And I turned around again, and he grabbed me and tackled me to the ground, choking me.

(Doc. No. 31-4, p. 41, ln 12-24). Dollar testified that when Adams pulled him down, he fell on top of Adams, who then pushed Dollar over on to his stomach with the assistance of Harrison and another sheriff's office employee. Adams sat or pressed his knee on Dollar's back and shoved his face into the concrete and pulled his hair. He was handcuffed, brought to his feet, and taken back inside.

Casey Cresswell, a detention officer with Van Buren County, was present the day Ronnie came into the office about the truck. She testified that she witnessed the events inside the office

2

from behind the glass window. She said she looked up when she heard Adams yelling and "the next thing you know, they're pushing Ronnie outside" while Ronnie had his "hands up" and was "stepping backwards" while Adams had "his finger in Ronnie's face." (Doc. No. 29-4, p. 11). She further testified that she never heard Dollar's voice. *Id.* Cresswell did not see what happened outside at the time it occurred, but she was able to watch the video of the events outside later that day. She testified that she was "totally appalled" at what she saw to the point where she filed a complaint with the Department of Justice and the Arkansas State Police.

Adams's account of the events is very different. He reported that Dollar got aggressive inside the office, repeatedly refused to leave, and was screaming in Adams's face. He stated that he only took Dollar to the ground after Dollar took an aggressive posture and balled his right fist at his side (which Dollar, who is left handed, disputes in his deposition). Harrison executed an affidavit stating that Dollar got loud inside the building while demanding to see the sheriff and refused to leave. (Doc. No. 31-2). She also stated that once Adams and Dollar were outside, Adams repeatedly asked Dollar to leave and that Dollar was yelling. While she saw Adams wrap his right arm around Adam's neck and witnessed the takedown, she did not have a view of the right side of Dollar's body because it was blocked by Adams..

There is a video of the events that happened outside the sheriff's office. There is also about a minute of video from inside the office when Dollar first walked in, but about ten minutes of the inside video—though it had been viewed by several county employees immediately after the incident—was not able to be produced in discovery. Plaintiff alleges deliberate destruction. While there is no sound, the evidence viewed most favorably to Dollar supports his account of the events.

Because he was dizzy and had a blood-clotting disorder, Dollar requested that he be taken

3

to the hospital out of concern that he might have an internal bleed from hitting his head on the concrete. After sitting handcuffed for a couple of hours, Dollar was taken to the hospital where an MRI confirmed that he was not suffering a bleed.[1] Once he got back to the sheriff's office, he was booked for aggravated assault on Adams[2] (a felony) and disorderly conduct (a misdemeanor). Rather than being released on his own recognizance with a court date, Dollar spent the weekend in jail because of the pending felony charge. He was released without bond on Monday, January 22, 2024. After reviewing the video and the statements from the sheriff's office, the prosecutor did not charge Dollar with a felony. The disorderly conduct charge was tried in November of 2024, and the court granted Dollar's motion for directed verdict.

Dollar filed a 42 U.S.C. §1983 action alleging that defendants violated his constitutional rights and the Arkansas Civil Rights Act (ACRA) through the use of excessive force, false imprisonment, civil conspiracy, and negligent hiring, supervision, and retention. He claims physical injuries as well as emotional distress. Defendants moved for summary judgment on all claims and asserted claims of qualified immunity.

II. <u>Legal Standard</u>

Summary judgment is appropriate only when the evidence, when viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue of material fact and that the defendant is entitled to entry of judgment as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The initial burden is on the moving party to

---

[1] Dollar testified that Sheriff Koonce came to see him while he was at the hospital and "chewed him out" and told him that Adams had every right to do what he had done. (Doc. No. 21-4, p. 81, ln 16-20).

[2] The affidavit for the arrest of Dollar states that as Dollar was screaming back at Adams, "his saliva transferred from his mouth to Chief Adams' forehead and bottom lip." (Doc. 39-9, p. 2). At his deposition, Adams testified that he realized later that he was "in the wrong" and that Dollar did not spit in his face on purpose. (Doc. 31-3, pp. 41-42).

demonstrate the absence of a genuine issue of material fact. *Celotex*, at 323. The burden then shifts to the nonmoving party to establish that there is a genuine issue to be determined at trial. *Prudential Ins. Co. v. Hinkel*, 121 F.3d 364, 366 (8th Cir. 1997).

A government official is entitled to qualified immunity in a § 1983 case "unless the official's conduct violates a clearly established constitutional or statutory right of which a reasonable person would have known." *Brown v. City of Golden Valley*, 574 F.3d 491, 495 (8th Cir. 2009). Courts undertake a two-step inquiry to make this determination: "(1) whether the facts shown by the plaintiff make out a violation of a constitutional or statutory right, and (2) whether that right was clearly established at the time of the defendant's alleged misconduct." *Id.* at 496.

III. Analysis

The Court will address the claims as presented in Defendants' brief in support of their motion for summary judgment. At the outset, the Court notes that in the style of the case only Sheriff Eric Koonce and Chief Deputy Derek Adam are explicitly named in their individual capacity as well as their official capacity. The style does not reflect in which capacity Investigator Chasta Harrison was sued. Defendants argue that Dollar has not made an individual capacity claim against Harrison. In response Dollar argues that under the "course of proceedings" test announced *S.A.A. v. Geisler*, 127 F.4th 1133 (8th Cir. 2025), he also is suing Harrison individually. The Court finds that, as *Geisler* is to be applied retroactively, the allegations in the complaint state individual claims against Harrison. *Geisler* at 1139. The allegations in the complaint and the amended complaint were sufficient for Harrison to fairly ascertain "that she was being sued in her individual capacity" and that "her personal liability was at stake." *Id.* (quoting *Daskalea v. D.C.*, 227 F.3d 433, 448 (D.C. Cir. 2000)).

As the "ACRA is generally treated as coextensive with § 1983 and analyzed under federal standards," the Court will not separately address the ACRA claims. *McDaniel v. Neal*, 44 F.4th 1085, 1093 (8th Cir. 2022); Arl. Code Ann. § 16-123-105(c). Plaintiff relies on the same arguments for both.

      A.      <u>False Arrest</u>. "It is well established that a warrantless arrest without probable cause violates an individual's constitutional rights under the Fourth and Fourteenth Amendments." *Marksmeier v. Davie,* 622 F.3d 896, 900 (8th Cir.2010) (citation omitted). Probable cause exists "when the totality of the circumstances at the time of the arrest are sufficient to lead a reasonable person to believe that the defendant has committed or is committing an offense." *Ryno v. City of Waynesville*, 58 F.4th 995, 1005 (8th Cir. 2023) (cleaned up).

In a qualified immunity analysis, whether probable cause exists goes to the first prong of the qualified immunity analysis, whether a constitutional right has been violated. *Id.* at 1006. As to the second prong, whether the right has been clearly established, courts are to consider whether a defendant has established arguable probable cause, which exists "even where an officer mistakenly arrests a suspect believing it is based in probable cause if the mistake is 'objectively reasonable.'" *Id.* (citing *Borgman v. Kedley*, 646 F.3d 518, 523 (8th Cir. 2011)).

Arkansas law defines disorderly conduct, in relevant part, as engaging "fighting or in violent, threatening, or tumultuous behavior" or making "unreasonable or excessive noise" with the "purpose to cause public inconvenience, annoyance, or alarm or recklessly creating a risk of public inconvenience, annoyance, or alarm." Ark. Code Ann. § 5-71-207. The Eighth Circuit, denying a vagueness challenge to the statute, held that "the offender must intend to cause public inconvenience, annoyance, or alarm by obstructing traffic or making unreasonable or excessive

6

noise, or must recklessly disregard the risk of doing so." *Duhe v. City of Little Rock*, 902 F.3d 858, 864 (8th Cir. 2018). As discussed above, there are sharply conflicting versions regarding Dollar's behavior, demeanor, and volume that preceded the warrantless arrest. Dollar has submitted evidence that, while he was insisting on talking to Sheriff Koonce, he was not being unreasonably loud or threatening. Viewing the evidence, including the silent video, most favorably to Dollar, Defendants have not established that probable cause existed for his arrest. The same disputed material facts also preclude a finding of arguable probable cause. Adams has not established that he is entitled to qualified immunity on this claim and disputed evidence precludes summary judgment. As in *Evans v. Cabot Sch. Dist.*, 114 F.4th 946, 955 (8th Cir. 2024), "a jury needs to decide 'whether the [Dollar] was becoming disorderly.'" (quoting *Tanner v. Ziegenhorn*, No. 4:17-CV-780, 2020 WL 5648642, at *2 (E.D. Ark. Sept. 22, 2020)). Furthermore, while Dollar was ultimately not charged with the felony assault, Adams admitted that he arrested Dollar he wanted him charged with assault at the time but admits now that "[he] was in the wrong. [Dollar] didn't spit on me on purpose." (Doc. No. 31-2, pp. 41-42).

As to the claim for false arrest against Harrison, it is undisputed that while she assisted Adams, she was not the arresting officer. The Eighth Circuit has held that while an assisting officer cannot "blindly follow orders," the officer "may rely on the probable cause determination and follow the directions of an officer who is directing the arrest 'as long as the reliance is reasonable.'" *Baude v. Leyshock*, 23 F.4th 1065, 1074 (8th Cir. 2022) (quoting *Ehlers v. City of Rapid City*, 846 F.3d 1002, 1010 (8th Cir. 2017). Harrison submitted an affidavit stating that while she observed Adams's take-down of Dollar through the window, she could not see Dollar's right side as it was blocked by Adams. Therefore, she could not see if he had in fact

7

clenched his right fist as Adams' stated. Under these facts, Harrison is entitled to qualified immunity on the claim of false arrest.

Finally, as to the claim for false arrest against Sheriff Koonce, he was not at the scene of the arrest and did not assist in the arrest. Dollar claims that Sheriff Koonce has liability because "he was informed of the arrest shortly after and refused to release" Dollar despite knowing that there was no probable cause. However, Dollar has not submitted any authority that he had a clearly established constitutional right to be released from custody by the sheriff on these facts. Sheriff Koonce is also entitled to qualified immunity on the claim of false arrest.

B. <u>Excessive Force and Battery</u>. Dollar asserts claims of excessive force and battery against Adams and Harrison individually. "The right to be free from excessive force in the context of an arrest is clearly established under the Fourth Amendment's prohibition against unreasonable searches and seizures." *Brown v. City of Golden Valley,* 574 F.3d 491, 499 (8th Cir.2009). An arresting officer the "right to use some degree of physical coercion or threat." *Graham v. Connor,* 490 U.S. 386, 396 (1989). The question is whether, "when viewed from the perspective of a reasonable officer on the scene," "the amount of force used was objectively reasonable under the particular circumstances." *Henderson v. Munn,* 439 F.3d 497, 502 (8th Cir.2006) (cleaned up). "Some relevant considerations include: the severity of the crime; whether the suspect poses a threat of harm to others; whether the suspect is resisting arrest; and other factors, such as whether the situation is "tense, uncertain, and rapidly evolving," which would force an officer to make "split-second judgments" about how much force is necessary." *Coker v. Arkansas State Police*, 734 F.3d 838, 842–43 (8th Cir. 2013) (citations omitted).

Viewing the evidence most favorably to Dollar, the Court cannot determine that Adams's use of force was reasonable as a matter of law. A reasonable jury could find that Dollar was at

the point of leaving the grounds when Adams called out to him, yelled directly in his face and bumped his chest before throwing his arm around Dollar's neck and taking him to the ground. Dollar testified that while he was on the ground and not resisting, Adams pushed his face into the concrete and pulled his hair. The jury could also conclude from the video evidence that Adams used unreasonable force with his knee on Dollar's back after he was on the ground and not resisting. The crime he was alleged to have committed was not severe, and a jury could conclude from the evidence that Dollar was not resisting arrest. Dollar testified that he still suffers from pain in his left shoulder following the incident. Adams has not established that he is entitled to qualified immunity or summary judgment on these claims.

      As to Harrison, Dollar argues that she is liable on the claim of excessive force because she assisted in restraining his arms and failed to intervene to stop Adams "despite having the opportunity." The evidence does not support a claim that Harrison herself used excessive force, and Dollar does not argue that she committed battery. "[A] police officer may be liable if he does not intervene to prevent the use of excessive force when (1) the officer observed or had reason to know that excessive force would be or was being used, and (2) the officer had both the opportunity and the means to prevent the harm from occurring." *Mitchell v. Kirchmeier*, 28 F.4th 888, 901 (8th Cir. 2022) (quoting *Robinson v. Payton*, 791 F.3d 824, 829 (8th Cir. 2015)). Dollar has not pointed to any evidence, or to any authority, to support his claim that Harrison had the opportunity to stop Adams's use of force against him. She was inside the building when it happened, and the video shows that the takedown happened in the blink of an eye. In the absence of any authority cited to the contrary, the Court finds that Harrison is entitled to qualified immunity on the charges of excessive force and battery.

C. <u>Civil Conspiracy</u>. To establish a § 1983 conspiracy claim, a plaintiff must show that a defendant conspired with others to deprive him of a constitutional right, an "overt act in furtherance of the conspiracy, and that the act injured plaintiff. *Saunders v. Thies*, 38 F.4th 701, 715 (8th Cir. 2022). He must also show that he in fact suffered a deprivation of his constitutional rights. *Id.* Defendants argue that Dollar has neither alleged nor proven any of the elements to establish this claim. Defendants also raise the defense of the intracorporate conspiracy doctrine, which provides that "a local government entity cannot conspire with itself through its agents acting within the scope of their employment." *Kelly v. City of Omaha, Neb.*, No. 14-3446, 2016 WL 660117 (8th Cir. Feb. 18, 2016) (quoting *L.L. Nelson Enters., Inc. v. Cty. of St. Louis, Mo.*, 673 F.3d 799, 812 (8th Cir.2012)).

The Court finds that the conspiracy claims against Adams, Harrison, and Koonce are barred by the intracorporate conspiracy doctrine. Dollar argues against the application of the doctrine, stating that his evidence "suggests Adams's aggression stemmed from personal animus" and "Harrison and Koonce's actions may reflect similar motives." In support of this argument, Dollar cites to *Kelly* and *L.L. Nelson*. However, those cases do not support a personal-animus exception, but rather the opposite: "Government agents can act within the scope of their employment duties "even though [a] complaint alleges improprieties in the execution of these duties." *Kelly* at 1078 (quoting *L.L. Nelson* at 812).

Although not necessary given the application of the intracorporate conspiracy doctrine, the Court will address Dollar's remaining conspiracy arguments. Dollar argues that he has supplied "circumstantial evidence that Defendants acted in concert to arrest Plaintiff without probable cause and used excessive force." Dollar relies on "Harrison's assistance in the arrest and Koonce's refusal to release Plaintiff" as evidence of "a shared intent to deprive him of his

10

rights." *Id.* As to Harrison, the fact that she acted "in concert" with Adams to secure the handcuffs on Dollar is not the same as participating in a conspiracy. As to Koonce, the evidence Dollar relies on occurred after the incident of the arrest and use of force. Dollar has failed to come forward with evidence from which a reasonable jury could infer the existence of an agreement between the individual defendants to violate Dollar's rights to be free from unlawful arrest and excessive force.

Finally, Dollar makes the leap that, in furtherance of the conspiracy to arrest him without probable cause and to use excessive force, Adams and Koonce attempted to intimidate witnesses after the fact. (Coc. No. 39, p. 10). The Court acknowledges that Dollar has submitted evidence to support at least an inference of witness intimidation with the testimony of Dylan Tumbleson and the news release involving three witnesses. However, in addition to being barred by the intracorporate conspiracy doctrine, any act in furtherance of the alleged conspiracy to deprive him of his constitutional rights would have to have occurred before the alleged constitutional violations. This is not to say there was no evidence of possible witness intimidation, but that evidence does not support Dollar's claim of civil conspiracy as argued. For these reasons, Defendants are entitled to summary judgment as well as qualified immunity on the individual claims against them for civil conspiracy.

D. <u>Wrongful hiring, supervision, or retention</u>. In his amended complaint, Dollar alleges that Sheriff Koonce acted with deliberate indifference to Dollar's safety in hiring, supervising, and retaining "the conspicuously unqualified and ill-tempered" Adams. (Doc. No. 11, p. 12). [3] To establish personal liability against Sheriff Koonce, Dollar must show that Koonce "(1) had

---

[3] The undisputed evidence is that the previous sheriff, Sheriff Emberton, hired Adams, not Sheriff Koonce. (Doc. 31-2, p. 20-21), so he cannot be personally liable for that decision. Dollar does not pursue the allegation of negligent hiring in his response.

notice of a pattern of unconstitutional acts committed by subordinates; (2) was deliberately indifferent to or tacitly authorized those acts; and (3) failed to take sufficient remedial action; (4) proximately causing injury to [the plaintiff]." *Perkins v. Hastings*, 915 F.3d 512, 524 (8th Cir. 2019) (cleaned up). Defendants argue that Dollar has not presented evidence that Koonce had notice of a pattern of unconstitutional conduct involving Adams. Dollar argues that whether Koonce had notice is a disputed material fact.

Dollar relies on the following evidence to support his claim against Koonce : (1) Adams received a less than honorable discharge from the United States Air Force when he was eighteen or nineteen yeas old; (2) he was charged with felony drug offense in 2012; (3) he was charged with a felony domestic battery of his uncle in or around 2018 but the charges were dropped after Adams's settled with his uncle; and  (4) he was banned from a community sports facility in approximately 2021 for his verbal altercation with another spectator. (Doc. No. 31-3).

First, this is not a list of unconstitutional behaviors. None of the challenged behavior occurred while he was on duty as law enforcement or otherwise qualifies as unconstitutional. Furthermore, "[t]o impose supervisory liability, other misconduct must be very similar to the conduct giving rise to liability." *Livers v. Schenck*, 700 F.3d 340, 356 (8th Cir. 2012). The military discharge and drug charge are remote in time and in no way related to the conduct challenged in this action, nor is the yelling incident at the ballpark. And even assuming Koonce had knowledge of Adams's charge for domestic battery, that event occurred over five years prior to the January 19, 2024 incident and does not constitute a pattern.

As to notice, Koonce testified that he was not aware of any of these incidents prior to Dollar's arrest on January 19, 2024, except for Adams having told him at some point about the ballpark incident. (Doc. No. 31-1, p. 2 and Doc. 39-1, pp. 7-10). Rather than meet proof with

12

proof, Dollar argues in a single paragraph that "Koonce had notice of Adams' prior aggressive behavior, including a ballpark incident and citizen complaints." (Doc. 39, p. 11). However, he does not cite to the record to support his conclusion. Dollar then states that his evidence "creates a triable issue as Koonce's claim of limited knowledge is contradicted by documented complaints." *Id.* Again, there is no citation to any evidence of record to support his claim, nor is the Court aware of any other than what is cited above. While he did attach five hundred pages of exhibits, the Court is not responsible for mining for evidence to support a plaintiff's argument. *See Rodgers v. City of Des Moines*, 435 F.3d 904, 908 (8th Cir. 2006) ("Without some guidance, we will not mine a summary judgment record searching for nuggets of factual disputes to gild a party's arguments."). Dollar has failed to establish a genuine dispute of material fact that that Koonce had notice of a pattern of unconstitutional acts committed by Adams and he is entitled to summary judgment and qualified immunity on this claim against him in his individual capacity.

    E. <u>Claims against Van Buren County</u>. Dollar named Adam, Harrison and Koonce as defendants individually and in their official capacity. He also named Van Buren County as a defendant. A suit against an individual in his official capacity is treated as a suit against the county. *Liebe v. Norton*, 157 F.3d 574, 578–79 (8th Cir. 1998). And the county cannot be held liable in §1983 action for deprivations of constitutional rights unless "the deprivation is the result of a policy or custom" of the county. *Id*. Dollar has not submitted evidence of a policy or custom that would have led to the deprivation of his rights. In his brief he argues that there is "ample evidence" that the county's policies were inadequate and failed to address "known risks of misconduct," but he does not elaborate on what the policy is or where it can be found. Instead he refers to the list of misconduct including the 2018 felony assault charge and his ban from the sports facility as having provided "plenty of notice" to Koonce that Adams was a "rogue

13

timebomb that exploded on Ronnie Dollar." (Doc. No. 39, p. 11). Without evidentiary support, this argument is insufficient defeat the county's motion for summary judgment.

IV. Conclusion

For the reasons set forth above, Defendants' motion for summary judgment (Doc. No. 29) is GRANTED in part and DENIED in part. Defendants are entitled to summary judgment on all claims except for Plaintiff's claims against Defendant Adam for false arrest and excessive force. The remaining defendants are dismissed.

IT IS SO ORDERED this 7th day of October, 2025.

_____
United States District Judge